## McCloskey *versus* Cyphert.

Where the real and personal estate of a debtor was sold at sheriff's sale, and his minor son, who had been emancipated by the father from his control, took a lease of the land, and the father and his family continued to reside with the son on the land, and the son acquired property by gift and by his own industry: it was *held*, that such property could not be taken in execution for the debts of the father.

The right of an infant to be the owner of property is as clear and as well protected as that of a person who has arrived at full age.

A minor is bound to render obedience to his father, who may employ him about his own affairs, or hire him out and appropriate his wages, but he is not bound to do so for the benefit of his creditors.

The emancipation of the son from the control of the parent may be as perfect, while living under the same roof, as if they were separated.

In such case his right to his acquisitions is not at all impaired by the fact that he supports his father and family.

ERROR to the Common Pleas of *Clarion county*.

This was an action of trespass brought by Henry Cyphert, by his next friend, against John A. McCloskey, Dennis Burgoon, and others, to recover damages for taking and carrying away the property of the plaintiff. Solomon Cyphert, the father of the plaintiff, became insolvent in 1849, and his property, both real and personal, was sold by his creditors. The farm on which he lived was sold at sheriff's sale in 1851, to Reed McClune, and on account of some irregularity in the proceedings, was sold a second time, and purchased by B. F. and J. Harley; they leased the property to a man of the name of Jacob Peas, and he transferred his lease to Henry Cyphert, the plaintiff, then a minor of about seventeen years of age. Solomon Cyphert continued on the farm with his family, which consisted of a wife and eight minor children, of whom the plaintiff was the eldest. By the aid of relatives and the neighbours loaning him such necessary articles as were essential, the plaintiff commenced farming the place in the spring of 1852, and supporting his father, who was infirm, and the rest of the family. Under his management matters went on prosperously until the winter of 1854, when the defendant, Burgoon, who had recovered a judgment against Solomon Cyphert, the father, in 1849, sued out an execution and levied upon the personal property that the plaintiff had acquired, and a crop in the ground, and had them sold. To recover damages for which, this action was brought.

An ejectment was brought by McClune, the first purchaser at the sheriff's sale, against Cyphert and the Harleys, in which the first sale was sustained and the premises recovered. By an arrangement entered into with McClune, Henry Cyphert was to have the crop then in the ground, being the same that was afterwards seized and sold on Burgoon's execution.

[McCloskey *v.* Cyphert.]

On the trial in the court below, the plaintiff gave evidence that he had been emancipated by his father at the time and previous to entering into the arrangement for farming the place, and that the articles of husbandry and cattle given by his relatives were given to him and not to his father.

The defendants resisted a recovery, and presented the following points of defence:—

1st. If Reed McClune was the real owner of the Cyphert farm before and at the time the crops were raised claimed in this suit, plaintiff cannot recover as to such crops, whether in the ground or cut at the time of the sale by the sheriff.

2d. Even should the court leave it to the jury to say whether the parental authority had been relaxed so as to allow Henry to act for himself, yet Solomon Cyphert, the father, had a right to resume that authority at any time he saw proper, and the agreement between him and Reed McClune and Harleys, dated 4th January, 1854, is evidence he did so, and if he did so the father had a right to any property his son acquired in the mean time.

3d. While a son is under age and continues to reside with his father and in the family as children generally do, his labour enures to the benefit of his father, and if the father, being indebted, even consents to his son's farming the place in the son's name and contracting as if it were the son's own, still such an arrangement is a fraud in law as to creditors.

4th. If while a minor, a son living with the father and in the family, as mentioned in the last point, cattle, horses, sheep or hogs, &c., be given to the son to be used for the support and maintenance of the family, the increase or young of such gifts to be the son's also for the use of the family, they being raised and fed upon the products of the place, and allowed to be mixed up with the other property thereon, and not required to be given back to the donor, the possession of the son is the possession of the father, and such possession of the son is fraudulent and void against the creditors, and the property may be taken on execution and sold as the property of the father.

5th. If the plaintiff, who is a minor, lived with his father in the family after the alleged lease, in the same manner that he did before, the possession of any increase, of gifts, or things lent him, would not be open, distinct, and notorious, such as the law requires in such case, and therefore fraudulent as to creditors.

6th. If the jury believe that the arrangement between Peas, Solomon Cyphert, and his son, the plaintiff, was made for the purpose of securing the property of Solomon Cyphert and his labour and that of his son's from his creditors, so that they might be made the means in the hands of the plaintiff to enable him to maintain and support his father and the family, the transaction was fraudulent and void as against the creditors.

[McCloskey *v.* Cyphert.]

7th. If the jury believe that the object of the arrangement between Peas, Solomon Cyphert, and Henry Cyphert, was to enable Henry Cyphert, the plaintiff, to support his father and family as stated in the last point, and he was to be in fact agent of his father in transacting the business, then the plaintiff cannot recover any damages in this action for the sale of the property purchased by Henry Cyphert with the proceeds of the farm, or given to him by other persons after this arrangement and while it existed.

8th. That if the jury believe from all the facts in this case that there was a family arrangement to cover up the labour of Solomon Cyphert and his minor sons from the creditors of Solomon Cyphert, so that the same might be used to maintain the family of plaintiff's father, such arrangement was fraudulent and void as to creditors, and the subject-matter of the same was liable to be seized and sold on execution against the father.

The court below (McCalmont, P. J.) answered these points as follows :—

"1st point.—Answered in the negative.

"2d point.—Answer. We have submitted the agreement signed by Cyphert with McClune as evidence; but as explained by the facts that Cyphert and the Harleys were defendants in the ejectment, and that Henry was not a party, and by the testimony of McClune and Cyphert, if believed, the inference drawn in this point from the evidence would be rebutted. Nor would the father have a right to the grain growing on the farm, that had been sown before and raised under the lease entered into by his son with his consent; or the property which was given to the son prior thereto, but only to the wages of his labour which had accrued in the mean time. As qualified we answer this point affirmatively.

"3d point.—Answer. Such an arrangement would be a fraud in law as to creditors if the father owned the farm, but as applicable to this cause we answer the point in the negative.

"4th point.—Answered in the negative.

"5th point.- --Answered in the negative.

"6th point.—Answer. Actual fraud is for the jury. As to the property of Solomon Cyphert we answer this point in the affirmative. If the intent were to cover his personal property and any of it was transferred to Henry with such fraudulent intent, the transfer would be void, and the defendant would have had a right to have taken the property so acquired in execution. But this will not apply to the labour of Solomon Cyphert as against prior creditors. He had a right to dispose of it as he pleased, even to protect it from his creditors, and they could only take in execution his tangible earnings which belonged to him, nor would the property which was given to Henry by his relatives, or the increase of the cattle be liable to the creditors of Solomon. In order to make it fraudulent as to creditors we further instruct you that the

[McCloskey v. Cyphert.]

transfer must have been to Henry of more property than had been exempt from the creditors by law. That left by law was as much free from Solomon's creditors as if purchased fairly at sheriff's sale and left with him by a stranger. But any increase of Solomon's property not exempt by law would have been liable to his creditors.

"7th point.—Answer. If Henry was to be the agent of his father in transacting the business it would show him to be the owner of the property, and this part of the point would be answered in the affirmative as to the proceeds of the farm, but otherwise the point is answered in the negative.

"8th point.—Answer. If the family arrangement be meant the gifts of the relatives and their agreements together with the Harleys and the family, we believe that the jury might readily find the facts as herein stated. And upon consideration, if we have not answered this sufficiently in our answer to the 6th point, we are of the opinion that the law is not so applicable to the facts of this case, and we answer this point in the negative."

The jury found a verdict for the plaintiff for $468.13.

. The defendants sued out this writ, and assigned the answers of the court to the points for error.

*Myers*, for plaintiff in error.—McClune owned the place, and the grain being raised under the Harleys with the recovery it would pass to him, and the plaintiff has no title which would maintain this action. The 3d point, though admitted by the court below to be correct, as a general proposition is said not to apply to this cause, because the father did not own the farm. The allegation of the defendant was that it was a fraudulent contrivance. The labour of the son during his minority would enure to the benefit of his father.

The property of the father which was said to be exempt by law, and that claimed by the son was so mixed up that the one could not be distinguished from the other. There was no open and distinct possession by the son, and the arrangement would be fraudulent in law: McVicker v. May, 10 *Barr* 224.

The 7th and 8th points of plaintiffs in error and defendants below, should have been affirmed. No family arrangement, or arrangement by a minor and his relatives can be made, by which his father's labour or his own, which belong by law to the father, is covered up and protected from creditors. The property which a son acquires by such an arrangement belongs to the father. And if Peas and Solomon Cyphert went into an arrangement, together with Cyphert's son Henry, by which Henry got property, to support his father and family or carry on business as the agent of his father, such an arrangement would be

fraudulent in law—upon the principle laid down in the case cited.

*Reid*, for defendant in error.—The tenant or occupier has a right to maintain trespass against a mere wrongdoer: Commissioners *v.* Wood, 10 *Barr* 93. But McClune's right to the grain was transferred to the plaintiff before the trespass.

The plaintiffs in error confound this with a *sale* by the father. There was nothing here to transfer; the son was under no obligations to pay the father's debts. That a father can manumit a minor child is settled in Galbraith *v.* Black, 4 *S. & R.* 407; U. S. *v.* Mertz, 2 *Watts* 408; *Sto. on Con.* § 74 *a*; 2 *Kent* 193. That an insolvent father can do so is ruled in Holdship *v.* Patterson, 7 *Watts* 547.

The creditors could claim the gifts bestowed by the relatives or the increase of them, for that follows the gift as an incident. *Cujus est dare, ejus est disponere:* Ashurst *v.* Given, 3 *W. & S.* 330; Vandyke *v.* Christ, 7 *W. & S.* 374; McMahon *v.* Sloan, 2 *Jones* 231; Jordan *v.* Breckridge, 3 *Barr* 442; Avery *v.* Street, 6 *Watts* 248; Stuck *v.* Mackey, 4 *W. & S.* 200; Hugus *v.* Robinson, 12 *Harris* 9.

The opinion of the court was delivered by

BLACK, J.—Solomon Cyphert was an insolvent man with a large family. The farm on which he lived, and all his personal property not exempt from execution, had been sold by the sheriff. His eldest son, then seventeen years of age, took a lease of the farm from the sheriff's vendee, and was enabled to stock it after a fashion by the generosity of certain relatives and friends who gave and lent him implements of husbandry, horses, cattle, hogs, and sheep. He raised several crops, increased the value of the stock, supported his father's family, and had a crop in the ground when the defendants seized everything for an old debt of his father. Had they a legal right to do this?

If the father had saved anything out of his own wreck beyond what was legally exempt from levy and sale, and had given it to his son for the purpose of covering it up from his creditors, the transaction would have been fraudulent. The jury were in effect so instructed, but they found no fact of that sort. If the son was the mere servant and agent of his father, and his pretended ownership of the property a sham, he would have no right to complain that it was taken. But this also is negatived by the verdict. If he had even bought it from his father, paying an honest price for it, his title as against creditors might be doubtful, for want of the open delivery and exclusive possession which the law requires to make such a transfer valid. But that was not alleged at the trial. All the property in dispute was given to the plain-

[McCloskey *v.* Cyphert.]

tiff by other persons in his own right, and the lease of the land appears to have been taken in good faith by himself and for himself. He got nothing from his father; for his father had nothing to give him; his whole offence, if he committed any, consisted in applying what he received from the bounty of his friends, and what he made by his own labour in such a manner as to rescue his parents and the younger members of the family from want. There was, therefore, no fair question of actual fraud in the case; or if there was, the verdict settled it conclusively against the defendants. Nor was it possible to raise the point of legal fraud on the ground of an imperfect purchase of goods from an indebted man. The defence can be made out only by showing that the minor child of an insolvent person cannot, even with the consent of his father, acquire property by gift, or create by his labour anything which will not go to his father's creditors. But that is a proposition which we think the law will not sustain.

The right of an infant to be the owner of property is as clear and as well protected as that of a person who has arrived at full age. When anything is given to an infant to be held by him in his own right, he has the title to it, and the parent, guardian, or master has in law no more right to take it (for any purpose beyond that of safe keeping) than a stranger.

A son is bound to render obedience to his father until he is twenty-one years of age. The father may employ him about his own business without paying him wages, or hire him out and appropriate his earnings if he sees fit. But he may also let him go free from his service whenever he chooses. If he happens to be in debt he is not bound to work his son or daughter as he would work a horse or a slave for the benefit of his creditors.

This emancipation of the son from the father's control may be as perfect when they both live together under the same roof as if they were separated. The father's renunciation of all legal right to the son's labour is not the less absolute, because other family ties continue unbroken, and the son's security in his rights of property would not be at all increased by turning his father out of doors.

It is not necessary in a Christian country to say that a son ought to support his father if he has the means of doing so. The law will not punish him for performing this duty, by depriving him of any right which he would otherwise have. If, therefore, an emancipated son gives part of his earnings to his father's support, it does not follow that the father or his creditors can for that reason take away all the rest of his earnings.

That the father in this case did some work on the farm, but not as much in value as his maintenance amounted to, is obviously of no importance whatever.

It seems that this farm was twice sold by the sheriff; first to

McClune, and afterwards to the Harleys.   McClune had the true title, but the Harleys got the possession and leased to Peas, who sublet to the plaintiff.   McClune recovered in ejectment, and might have turned the plaintiff out and taken from him the crop which he then had in the ground; but he did not do so.   He expressly agreed that he might cut and keep it on certain conditions, which seem to have been performed.   We are really not able to understand the argument which strives to convince us that these facts make the defendant's case any better.

Judgment affirmed.